UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **MARK PERKINS ET AL** | **CASE NO. 2:21-CV-02461** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SYNDICATE 4242 OF LLOYD'S OF LONDON** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 11] filed by defendant Certain Underwriters at Lloyd's, London Subscribing to ICAT Policy Number HCA 0000008602 02 ("Underwriters"). Underwriters moves for dismissal of plaintiffs' claims arising from their personal property coverage in this hurricane suit based on their alleged breach of policy conditions, namely failure to cooperate in investigation of their claim. Plaintiffs Mark and Brooke Perkins oppose the motion. Doc. 13.

### I.
#### BACKGROUND

This suit arises from damage inflicted to plaintiffs' home in Lake Charles, Louisiana, by Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020, and Hurricane Delta, which struck the same area on October 9, 2020. At all relevant times, the property was insured under a homeowner's policy issued by Underwriters. Plaintiffs allege that they report damage after Hurricane Laura and made claims, in relevant part, under Coverage A (Dwelling) and Coverage C (Personal Property). Doc. 1.

Nevertheless, they maintain, Underwriters failed to adequately inspect or value their claims. *Id.* Accordingly, they filed suit in this court on August 12, 2021, raising claims for breach of insurance contract and bad faith under Louisiana law. *Id.* The court issued its Case Management Order ("CMO") for first-party insurance claims arising from Hurricanes Laura and Delta, governing initial disclosures and the parties' participation in a streamlined settlement process. Doc. 2. The suit did not resolve in that process, however, and the matter is currently set for bench trial before the undersigned on April 3, 2023. Doc. 10.

Underwriters now brings this motion for summary judgment, asserting that plaintiffs' claims arising under Coverage C should be dismissed because they refused to comply with Underwriters' pre-suit requests to submit to an examination under oath relating to their contents list, in violation of the policy's "Duties After Loss" provisions. Doc. 11. Plaintiffs oppose the motion. Doc. 13.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written."

*Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046).

Here the policy provides, in relevant part:

> C. Duties After Loss
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following conditions is prejudicial to us. . . .
> . . . .
> 7. As often as we reasonably require:
> . . . .
>   b. Provide us with records and documents we request and permit us to make copies; and
>   c. Submit to an examination under oath, while not in the presence of another "insured," and sign the same[.]

Doc. 11, att. 12, p. 25.

Underwriters requested an Examination Under Oath ("EUO") of plaintiffs after issues arose with respect to plaintiffs' claim under Coverage C. Plaintiffs submitted contents lists representing various items allegedly damaged during the storms and valuing those items at a replacement cost value of $583,833.25. Doc. 11, att. 4. Glenna Cook, who was assigned to handle plaintiffs' contents claim in March 2021, has provided an affidavit stating that plaintiffs failed to provide receipts for most of the items even after they were requested by Underwriters. Doc. 11, att. 3, ¶¶ 9–11. Cook also stated that many of the items on the list were not on-site at the insured property but that plaintiffs failed to provide photographs of those items. *Id.* at ¶¶ 7–8. Finally, plaintiffs claimed the loss of two Persian rugs at a combined value of over $110,000.00. *See* doc. 11, att. 4, p. 7. However, they did not produce these rugs or provide any other proof of loss. Doc. 11, att. 3, ¶¶ 12–16. Instead, they contended that they had purchased them at an auto show and that plaintiff Mark

Perkins had thrown them out without photographing them after the storm because he had not realized how valuable they were. *Id.*

Based on these developments, Underwriters sent letters to both plaintiffs on June 14, 2021, outlining the alleged noncompliance described above with respect to investigation of the contents claim and setting plaintiffs' EUOs for July 1, 2021, in New Orleans. Doc. 11, atts. 5 & 6. At plaintiffs' request, by email dated June 20, the EUOs were pushed back by two weeks. Doc. 11, att. 7. On July 2, plaintiffs' counsel sent a letter of representation to Underwriters objecting to many of the assertions made in the June 14 letter setting the EUOs. Doc. 11, att. 9. Namely, he asserted that his clients had assisted Underwriters' third-party adjuster in compiling the inventory, for which the adjuster set the value, and that they had supplied the adjuster with photographs of items that had been thrown out. *Id.* He also objected to the setting of the EUOs in New Orleans and stated that his clients would not be attending. *Id.* Counsel for Underwriters responded on July 29, 2021, offering to conduct the EUOs in Lake Charles instead and requesting that plaintiffs' counsel provide dates for same in the next two weeks. Doc. 11, att. 10. Plaintiffs filed this suit on August 12, 2021. Doc. 1. Plaintiffs' counsel then replied on September 3, 2021, maintaining his clients' position that the claim had been adequately investigated and refusing to schedule the EUOs. Doc. 11, att. 11.

Based on the above, Underwriters asserts that plaintiffs have violated the Duties After Loss provisions of the policy and thereby voided their claim under Coverage C. "Louisiana law teaches that failure to fulfill policy requirements that are conditions precedent to an insurance contract precludes suit under the policy[.]" *Mosadegh v. State*

*Farm Fire & Cas. Co.*, 330 F. App'x 65, 65 (5th Cir. 2009) (citing *Lee v. United Fire & Casualty Co.,* 607 So.2d 685, 688 (La. Ct. App. 4th Cir. 1992); *Robbert v. Equitable Life Assur. Soc.,* 46 So.2d 286 (La. 1949)). Accordingly, an insured's failure to cooperate with the insurer and to fulfill his obligations under the policy may be asserted as a material breach and a defense to suit. *Spindel v. Bankers Spec. Ins. Co.*, 2010 WL 5439706, at *2 (E.D. La. Dec. 28, 2010). Louisiana courts have also emphasized, however, that

> a cooperation clause is emphatically not an escape hatch that an insurer may use to flee from liability. It is most certainly not the law of Louisiana that any failure to comply with the policy conditions, no matter how trivial, will relieve an insurer from liability under the policy it drafted and issued.

*Jackson v. State Farm Fire & Cas. Co.*, 2010 WL 724108, at *8 (E.D. La. Feb. 22, 2010). Instead, dismissal on these grounds is "a draconian remedy" and is appropriate only where the insurer can establish actual prejudice. *Kerr v. State Farm Fire & Cas. Co.*, 934 F.Supp.2d 853, 857–58 (M.D. La. 2012) (internal quotations omitted); *accord Illinois Union Ins. Co. v. La. Health Serv. and Indem. Co.*, 257 F.Supp.3d 763, 797 (E.D. La. 2017).

In terms of policy breaches, "[a]n outright failure to submit to an examination is the easy case." *Spindel*, 2010 WL 5439706 at *2 (internal quotations omitted). But courts have found that the insured's claims are not subject to dismissal when he can offer a "reasonable explanation" for his noncompliance. *Beasley v. GeoVera Spec. Ins. Co.*, 2015 WL 2372328, at *4 (E.D. La. May 15, 2015). If no such explanation is offered, the insurer may establish prejudice by showing "that it is unable to obtain information while it is still fresh [and that] it cannot inspect the subject property in a timely fashion after receiving information from an examination under oath." *Spindel*, 2010 WL 5439706 at *2.

Leaving aside the reasonableness of plaintiffs' explanations, Underwriters cannot succeed on this claim because it has not established any prejudice from their refusal to sit for EUOs first requested in June 2021. Underwriters did not seek an EUO from plaintiffs until several months after the storm and after compilation of the inventory. It also took the refusal by plaintiffs' counsel in September 2021 as the last word and made no move to compel this examination while the case was under the CMO's streamlined settlement process, even though the CMO allows for the parties to seek leave to conduct discovery. Finally, the case exited the CMO in March 2022. But Underwriters made no mention of the EUOs until filing this Motion for Summary Judgment in October of the same year. Underwriters argues that it was deprived of plaintiffs' fresh recollections in Summer 2021, because its own requests for information relating to the contents claim would have kept plaintiffs' memories from going stale. Yet the same should hold true through plaintiffs' involvement in the CMO, and the failure to seek any recourse from their refusal after September 2021 (when the case was already under the court's supervision) is attributable only to Underwriters. Likewise, any failure to obtain other discovery on the contents claim after that point is attributable only to Underwriters. Accordingly, Underwriters shows no basis for voiding the policy.

# IV.
## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 11] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 28th day of October, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**